UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS PRUDE,

Plaintiff,

Case No.

Hon.

v.

CITY OF KALAMAZOO,
a municipal corporation,
NICHOLAS DELEEUW, and
NATHAN BELEN, in their individual capacities,

Defendants.

---

**GOODMAN HURWITZ, P.C.**
Julie H. Hurwitz (P34720)
Matthew S. Erard (P81091)
Dayja S. Tillman (P86526)
684 W. Baltimore Avenue Suite 201
Detroit, Michigan 48202
(313) 567-6170
jhurwitz@goodmanhurwitz.com
merard@goodmanhurwitz.com
dtillman@goodmanhurwitz.com

*Attorneys for Plaintiff*

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Douglas Prude, by and through his attorneys, and states as follows:

## INTRODUCTION

1. This is a civil-rights action under 42 U.S.C. § 1983 arising from the unconstitutional malicious prosecution of Plaintiff Douglas Prude by officers of the Kalamazoo Department of Public Safety ("KDPS"), pursuant to the customs, policies, and practices of the CITY OF KALAMAZOO, acting through the KDPS, that affirmatively and proximately caused the violation of Plaintiff's constitutional rights.

## THE PARTIES

2. Plaintiff Douglas Prude was at all relevant times a resident of the City of Kalamazoo, the County of Kalamazoo, and the State of Michigan.

3. Defendant CITY OF KALAMAZOO ("CITY") is a municipal corporation chartered by the State of Michigan. It is, and has been at all times relevant hereto, authorized by law to maintain and operate a police department, known as the Kalamazoo Department of Public Safety (hereafter "KDPS"). By and through its agents, including but not limited to the Chief of Police, its supervisors, operating officers, boards, commissions, and committees and its final policymakers, Defendant CITY, at all times relevant hereto, established, promulgated, and implemented the policies, written and unwritten, of the KDPS, including those related to the hiring, training, supervision, and discipline of the employees of said Department, including but not limited to, the individual Defendants herein.

4. Defendant NICHOLAS DELEEUW was at all relevant times a KDPS police officer, acting under color of state law, within the scope of his employment and governmental authority, and pursuant to the customs, policies and/or practices of Defendant CITY, acting through the KDPS.

5. Defendant NATHAN BELEN was at all relevant times a KDPS police officer acting under color of state law, within the scope of his employment and governmental authority, and pursuant to the customs, policies and/or practices of Defendant CITY, acting through the KDPS.

## **JURISDICTION AND VENUE**

6. This action is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

8. Venue is proper under 28 U.S.C. § 1391 because the Defendants reside within this District, and the events or omissions giving rise to the claims occurred within this District.

## **COMMON ALLEGATIONS**

### ***Unconstitutional Seizure of Mr. Prude at the Fox Ridge Apartments***

9. On or about May 30, 2019, at approximately 6:30 pm, while it was still daylight, Mr. Prude was lawfully parked in his vehicle, with the engine off, in the

parking lot of the Fox Ridge Apartments, located at 1509 Fox Ridge Drive in Kalamazoo, Michigan.

10. Mr. Prude was there to visit a resident of the complex and was not trespassing.

11. Defendants DELEEUW and BELEN, while on duty as KDPS police officers, were patrolling the parking lot of the Fox Ridge Apartments.

12. Defendants regularly patrolled that area as part of a KDPS "directed patrol," in coordination with the Fox Ridge management, looking for trespassers identified in Fox Ridge management's "trespasser list," as incorporated into KDPS's I-Leads database, in order to cite or arrest them.

13. Defendant DELEEUW saw Mr. Prude parked alone in his vehicle with the engine off. He pulled his marked patrol car up in front of Mr. Prude's car—without activating his emergency lights or siren and without blocking Mr. Prude from driving away—and approached the driver's side of the vehicle.

14. Defendant DELEEUW asked Plaintiff for his identification and whether he was a resident of the Fox Ridge Apartments.

15. Mr. Prude declined to identify himself and told Defendant DELEEUW that he was there visiting a resident.

16. Around this time, Defendant BELEN also approached the vehicle and identified Mr. Prude, having recognized him from an unrelated past encounter at a

different location.

17. Defendant DELEEUW advised Mr. Prude that, per Fox Ridge policies, he needed to be with a resident while on the property.

18. While Defendant BELEN stood watch over Mr. Prude, Defendant DELEEUW walked back to his patrol vehicle to run Mr. Prude's name through the I-Leads and LEIN databases, thus using Fox Ridge's "trespasser list" to find a legal justification for the detention already underway.

19. During this time, Mr. Prude asked Defendant BELEN if he was being detained, and Defendant BELEN responded in the affirmative, despite the absence of any reasonable suspicion of criminal activity.

20. At his criminal trial, both Defendants DELEEUW and BELEN admitted that they had no idea how long Plaintiff PRUDE had been parked in the parking space or what he had been doing prior to the encounter.

21. Mr. Prude had not had any contact with Fox Ridge management, staff, or security prior to his encounter with Defendants.

22. Recognizing that he was reasonably suspected only of failing to comply with Fox Ridge management's policy requiring accompaniment by a resident, Mr. Prude then started his car, rolled up his windows, and calmly drove away.

23. Two months later, in July 2019, Mr. Prude was arrested on a warrant from the May 30 incident and charged with two misdemeanors: a) second-degree

fleeing and eluding, under MICH. COMP. LAWS §257.602a(4); and b) resisting or obstructing a police officer, under MICH. COMP. LAWS §750.81d.

***Wrongful Prosecution, Conviction, and Incarceration***

24. On or about February 4, 2020, Mr. Prude was wrongfully convicted of both felony offenses after a jury trial in which Defendants DELEEUW and BELEN were the only witnesses who testified.

25. Defendant Officers' trial testimony was based entirely on their false contention that they had reasonable suspicion of a crime, based solely on the fact that Mr. Prude was parked in a "high crime area" and that he declined to identify himself.

26. On January 11, 2022, Mr. Prude was sentenced to a term of nine months and 25 days in the Kalamazoo County Jail. He was incarcerated until his release on July 2, 2022.

27. On July 5, 2024, the Michigan Supreme Court reversed Mr. Prude's convictions and ordered that judgments of acquittal be entered on both charges. *See* **Exh. A**, *People v. Prude*, 15 N.W.3d 249 (Mich. 2024).

***KDPS's Custom, Usage, Policy or Practice of Suspicionless Detentions***

28. Defendants DELEEUW and BELEN were present at the Fox Ridge Apartments as a matter of Departmental practice, having been assigned to a "directed patrol" of the complex.

29. Defendant DELEEUW testified that he had been to the Fox Ridge Apartments looking for trespassers "dozens of times if not over a hundred," and that nonresidents encountered there were routinely questioned, detained, and checked against the property owner's "trespasser list" incorporated into the KDPS I-Leads database.

30. As with the detention of Mr. Prude, it was the custom and practice of KDPS to detain individuals at the Fox Ridge Apartments based solely on their presence there as suspected nonresidents, without individualized reasonable suspicion of criminal activity.

31. This custom and practice was rooted in KDPS's official procedures and was so persistent, coordinated, and routinized as to constitute a policy.

32. Such policy was the moving force behind the unconstitutional seizure of Mr. Prude and his wrongful arrest, prosecution, conviction, incarceration, and other damages ensuing therefrom.

33. The constitutional limits on investigative detentions were clearly established long before May 30, 2019.

34. Defendant CITY, through KDPS, nonetheless maintained the above departmental policy in contravention of those constitutional limits.

35. Defendant CITY, through KDPS, additionally failed to adequately train and/or supervise its officers regarding those limits. Given the recurring directed-

patrol detentions at Fox Ridge Apartments, the need for such training was obvious, and the City's failure to provide it amounted to deliberate indifference to the constitutional rights of Mr. Prude and other similarly situated persons.

36. Defendant CITY's failure to supervise its officers regarding the constitutional limits on investigative detentions also evidenced approval, acquiescence and/or ratification of its officers' unconstitutional investigative detentions, arrests and prosecutions of innocent people, including Plaintiff.

37. After the Michigan Supreme Court's decision, KDPS's chief and final policymaker, David Boysen, acting in his official capacity, publicly defended the officers' conduct. He stated that he believed the officers had reasonable suspicion while acknowledging that they "may not have properly articulated the factors," and stated that KDPS "may make changes to its training." Boysen's statements reflect the City's sanction of the officers' unconstitutional conduct and the inadequacy of the City's training and supervision of its officers.

***<u>Absence of Reasonable Suspicion Under Clearly Established Law</u>***

38. The Fourth Amendment prohibits unreasonable seizures, including brief investigative detentions. A police officer may conduct an investigative stop only when the officer has reasonable suspicion, supported by specific and articulable facts, that the person is engaged in criminal activity.

39. Plaintiff's mere presence in an area purportedly known for frequent

criminal activity, standing alone, did not supply objectively reasonable particularized suspicion that he was committing a crime.

40. Similarly, Plaintiff's mere presence in a parked vehicle with its engine off in a parking lot did not create objectively reasonable, particularized suspicion that any crime had been committed.

41. Plaintiff, who explained that he was a visitor invited to the apartment complex by a resident, was lawfully present and was not trespassing because a landlord generally grants tenants the right to invite others into the common areas of the property.

42. An individual approached by the police, without any objectively reasonable particularized suspicion, need not answer any question put to him and may decline a request to identify himself. A refusal to cooperate alone does not furnish objectively reasonable particularized suspicion.

43. An apartment complex's private trespass policy, its posted signage, and a police department's arrangement with its private property management cannot create objectively reasonable, particularized suspicion.

44. The totality of the circumstances known to the Defendant Officers at the time of Mr. Prude's May 30, 2019 detention consisted of the following:

a. Plaintiff was alone and parked legally with the engine off during daylight hours in an area of the parking lot where criminal activity was known to

occur;

b. Plaintiff declined to identify himself when asked; and

c. Plaintiff was a nonresident visitor to the apartment complex, who was visiting a resident.

45. The totality of the circumstances did not establish any objectively reasonable particularized suspicion that Plaintiff was engaged in trespassing or any other criminal offense.

46. The unlawful and unconstitutional conduct by Defendant Officers was clearly established on May 30, 2019, and the Michigan Supreme Court so held when it reversed Plaintiff's convictions and remanded to the trial court to enter judgments of acquittal on both charges.

## **DAMAGES**

47. Defendants' actions deprived Mr. Prude of his constitutional and civil rights under the Fourth and Fourteenth Amendments to the United States Constitution, causing him to suffer damages.

48. Mr. Prude was deprived of his liberty through his unlawful seizure on May 30, 2019, as well as throughout years of pretrial proceedings and supervision, and during his incarceration from January 11, 2022, until his release on July 2, 2022.

49. Mr. Prude lost a vehicle that was towed and that he was unable to recover. He lost his housing and had no home when he was released. He lost time

with his family, including missed holidays and missed funerals.

50. Mr. Prude has suffered, and continues to suffer, severe emotional distress and psychological harm, assault, battery, and physical injury while incarcerated, as well as other collateral consequences of two wrongful felony convictions and loss of income.

51. Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions caused Mr. Prude the following injuries and damages, which continue to date and will continue into the future:

a. Personal and physical injuries;
b. Pain and suffering;
c. Severe mental anguish and emotional distress;
d. Loss of family relationships;
e. Severe psychological damage;
f. Loss of business and property;
g. Legal expenses;
h. Loss of income;
i. Physical illness and inadequate medical care;
j. Humiliation, indignities, and embarrassment; and
k. Restrictions on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational

opportunity, athletic opportunity, personal fulfillment, family relations, telecommunications, internet access, reading, television, movies, travel, enjoyment, and expression for all of which he is entitled to monetary relief.

## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983 – FOURTH AMENDMENT MALICIOUS PROSECUTION
### (Against All Defendants)

52. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as if fully restated herein.

53. As described above, the individually named Defendants violated Plaintiff's clearly established Fourth Amendment right to be free from criminal prosecution without probable cause.

54. Under Michigan law, in order to have committed a trespass on non-farmland, an individual must either have (a) entered the lands or premises of another without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or occupant; or (b) remained without lawful authority on the land or premises of another after being notified to depart by the owner or occupant or the agent of the owner or occupant.[1]

---

[1] *See* MICH. COMP. LAWS § 750.552(1).

55. At the time of Plaintiff's alleged flight from detention and obstruction thereof, Defendant Officers had no reasonable suspicion of any crime on which to detain him, nor any reason to believe that Fox Ridge management had forbidden his entry or notified him to depart.

56. Acting deliberately, recklessly, or intentionally, and under color of law, Defendants initiated, pursued, and participated in the decision to criminally prosecute Mr. Prude, including authoring police reports and giving testimony at his preliminary examination and trial that falsely framed the police encounter as a lawful investigative stop justified by reasonable suspicion.

57. There was no probable cause to arrest or prosecute Mr. Prude, insofar as each offense charged required a lawful command or detention.

58. Defendant Officers' commands and detention of Mr. Prude and his vehicle were unlawful because the officers lacked reasonable suspicion to detain him.

59. As a direct and proximate result of Defendants' conduct, a criminal prosecution was initiated and continued against Plaintiff PRUDE, causing an unreasonable deprivation of his liberty, in addition to his initial seizure, including pretrial restrictions and his six-month period of incarceration from January 11, 2022, to July 2, 2022.

60. The aforementioned criminal proceedings against Mr. Prude terminated

in his favor on July 5, 2024, when the Michigan Supreme Court reversed his convictions and sentences and remanded for entry of judgments of acquittal.

61. Defendants' conduct violated Mr. Prude's clearly established rights under the Fourth and Fourteenth Amendments to be free from malicious prosecution and unreasonable seizure, and directly and proximately caused the injuries and damages set forth above.

62. As a direct and proximate result of the foregoing acts, Plaintiff has suffered general and economic damages, as set forth above, at Paragraphs 47-51.

63. Defendants' acts and omissions were intentional, willful, reckless, and/or done with deliberate indifference to Mr. Prude's clearly established constitutional rights, entitling him to both compensatory and punitive damages as set forth above.

**COUNT II**
**42 U.S.C. § 1983 – MUNICIPAL/*MONELL* LIABILITY**
**(Against Defendant CITY)**

64. Plaintiff hereby incorporates by reference each of the foregoing paragraphs as if fully restated herein.

65. At all times herein, Defendant CITY, through KDPS and its supervisors and/or policymakers, maintained the following customs, usages, policies and/or practices:

a. Routine directed patrols of the Fox Ridge apartment complex parking lot for purposes of performing investigative detentions of individuals not

reasonably suspected of any crime in order to check their identities against the apartment management's trespasser list;

b. Failure to supervise, train and/or discipline law enforcement officers, including but not limited to the individually named Defendant Officers herein, with regard to detaining nonresidents at private apartment complexes, including the Fox Ridge Apartments, based on their mere presence there, without individualized reasonable suspicion of criminal activity, thereby resulting in the continuation of such unconstitutional actions by KDPS officers, including Defendants herein;

c. Failure to supervise, train and/or discipline law enforcement officers, including but not limited to the individually named Defendant Officers herein, with regard to its directed-patrol program and its arrangement with the Fox Ridge Apartments management, thereby resulting in the continuation of such unconstitutional actions by KDPS officers, including Defendants herein;

d. Failure to supervise, train and/or discipline its officers, including but not limited to the individually named Defendant Officers herein, regarding the constitutional limits on investigative detentions, including the well-established principles that presence in a high-crime area, a refusal to identify oneself, and a private trespass policy do not create objectively reasonable particularized suspicion. The need for such training was obvious in light of the recurring directed-patrol detentions at the Fox Ridge Apartments.

66. Defendant CITY, through KDPS and its supervisors and/or policymakers, as a matter of its own policy, custom, usage and/or practice, knowingly sanctioned and condoned the Defendant Officers' unconstitutional conduct herein by publicly endorsing and defending it even after the Michigan Supreme Court held that their conduct was unlawful.

67. Defendant CITY, through KDPS, has established a written policy "for officers to ***act as the agent of a property owner***" who has completed an

*Authorization for Kalamazoo Public Safety Officers to Investigate, Cite, and Arrest Trespassers* form, including the designation of persons banned from the premises. Said forms are then uploaded into the Department's I-Leads database.[2]

68. Under the same policy, Defendant CITY, through KDPS, requires that, if "reasonable suspicion is developed that a person is trespassing," an officer must "investigate to either confirm or dispel whether a trespass violation is taking place."[3] However, the policy provides no guidance for determining when reasonable suspicion of a trespassing violation exists, thus ensuring subjective, arbitrary, and discriminatory application.

69. The unlawful seizure of Mr. Prude was undertaken pursuant to the above-described policy.

70. By coordinating with the Fox Ridge management to conduct regular suspicion-less detentions of persons on the grounds of the apartment complex in order to check their identities against said management's trespass list, Defendant CITY ratified the custom of performing unreasonable seizures of persons and vehicles on the grounds of the apartment complex.

71. At Mr. Prude's criminal trial, Defendant DELEEUW testified that he

---

[2] **Exh. B**, KDPS, PUBLIC SAFETY PROCEDURES MANUAL § 219.3(7)(a)-(b) (emphasis added); *see* **Exh. C,** KDPS, *Authorization for Kalamazoo Public Safety Officers to Investigate, Cite, and Arrest Trespassers* (revised Dec. 23, 2013).
[3] **Exh., B**, KDPS, PUBLIC SAFETY PROCEDURES MANUAL § 219.3(4)(a).

had been on directed patrol to look for trespassers at the Fox Ridge Apartments "dozens of times if not over a hundred."

72. Each of the aforementioned policies, customs, usages and/or practices, including the failures to train, supervise, and/or discipline the individually named Defendants, was known to Defendant CITY as being highly likely and probable to cause violations of the constitutional rights of members of the public, including but not limited to Plaintiff herein.

73. The conduct of the individually named Defendants herein was committed pursuant to the policies, customs, usages and/or practices of Defendant CITY.

74. These aforementioned customs, usages, policies and/or practices were so persistent and widespread as to each constitute a policy that was a moving force behind the violation of Plaintiff PRUDE's constitutional rights.

75. As a direct and proximate result of Defendant CITY's unconstitutional customs, practices, and failures to train and supervise, Plaintiff was unlawfully seized, wrongfully prosecuted, convicted, and incarcerated, and he suffered the injuries and damages set forth above at Paragraphs 47-51.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Douglas Prude respectfully requests that this Honorable Court:

a. Adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declarations shall have the force and effect of final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's orders;

b. Award Plaintiff compensatory damages against all Defendants, jointly and severally, on each of Plaintiff's claims, in an amount to be determined at trial;

c. Award Plaintiff punitive damages against Defendant Officers on each of Plaintiff's claims against those parties, in an amount to be determined at trial, in order to deter future instances of similar misconduct;

d. Award Plaintiff pre-judgment interest as permitted by law and post-judgment interest pursuant to 28 U.S.C. § 1961.

e. Award Plaintiff his costs and reasonable attorney fees pursuant to Fed. R. Civ. P. 54(d)(1) and 42 U.S.C. § 1988(b); and

f. Award Plaintiff any and all further relief which the Court finds just and warranted under the circumstances.

Respectfully submitted,

GOODMAN HURWITZ, P.C.

_/S/ MATTHEW S. ERARD____
Julie H. Hurwitz (P34720)
Matthew S. Erard (P81091)
Dayja S. Tillman (P86526)
684 W. Baltimore Avenue
Detroit, MI 48202
(313) 567-6170
jhurwitz@goodmanhurwitz.com
merard@goodmanhurwitz.com
dtillman@goodmanhurwitz.com

*Attorneys for Plaintiff*

Dated: November 16, 2026

**JURY DEMAND**

Plaintiff demands a trial by jury in this action on each and every one of his claims.

Respectfully submitted,

GOODMAN HURWITZ, P.C.

_/S/ *MATTHEW S. ERARD*_______
Julie H. Hurwitz (P34720)
Matthew S. Erard (P81091)
Dayja S. Tillman (P86526)
684 W. Baltimore Ave. Suite 201
Detroit, MI 48202
(313) 567-6170
jhurwitz@goodmanhurwitz.com
merard@goodmanhurwitz.com
dtillman@goodmanhurwitz.com

*Attorneys for Plaintiff*

Dated: November 16, 2026